# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**SUNTREE TECHNOLOGIES, INC.,**

        **Plaintiff,**

**-vs-**                        **Case No.  6:09-cv-1945-Orl-28GJK**

**ECOSENSE INTERNATIONAL, INC.,**
**GEORGE DUSSICH,  DERRICO**
**CONSTRUCTION CORPORATION,**

        **Defendants.**

_____

# ORDER

Plaintiff Suntree Technologies, Inc. ("Suntree") brings claims of trademark infringement, false advertising, and deceptive and unfair trade practices against its competitor–EcoSense International, Inc. ("EcoSense")–and EcoSense's President, George Dussich ("Dussich") (collectively "Defendants"[1]).  Suntree, EcoSense, and Dussich have all moved for summary judgment.[2]  As discussed below, judgment must be granted in favor of

_____

[1] Suntree has settled all claims against Defendant Derrico Construction Corporation; therefore, all references to "Defendants" include only EcoSense and Dussich.

[2] This cause is now before the Court on Suntree's Motion for Summary Judgment (Doc. 73), Defendants' Response (Doc. 99), and Suntree's Reply (Doc. 108); EcoSense's Motion for Summary Judgment (Doc. 75), Suntree's Response (Doc. 101), and EcoSense's Reply (Doc. 107); and Dussich's Motion for Summary Judgment (Doc. 76), Suntree's Response (Doc. 102), and Dussich's Reply (Doc. 106).  The Court will also address Defendants' Motion to Strike Paragraphs Three, Four, and Five of John Robertson's Declaration (Doc. 93) and Suntree's Response (Doc. 96); and Suntree's Motion to Strike Defendants' Summary Judgment Filings for Exceeding the Page Limit (Doc. 104) and Defendants' Response (Doc. 114).

EcoSense and Dussich.

## I.  Motions to Strike

As a preliminary matter, Suntree and Defendants have each filed motions to strike. (Docs. 104 & 93).  Suntree seeks to have EcoSense's Motion for Summary Judgment (Doc. 75), Dussich's Motion for Summary Judgment (Doc. 76), Defendants' Motion to Strike (Doc. 93), and Defendants' Response to Suntree's motion for summary judgment (Doc. 99), stricken for exceeding the applicable page limits.  Defendants seek to have Paragraphs Three, Four, and Five of John Robertson's Declaration stricken for failure to comply with Federal Rule of Civil Procedure 56(c)(1).

In support of its motion, Suntree argues that each Defendant inappropriately filed separate motions for summary judgment rather than combining their arguments and filing a single motion.  Suntree's contention is without merit.  Although much can be said for brevity and conciseness in one's arguments, each Defendant is entitled to file its own, independent motion for summary judgment.

Suntree also argues that Defendants' Motion to Strike is actually a "disguised summary judgment opposition brief" and that therefore both the Motion to Strike and Defendants' Response to Suntree's motion for summary judgment should be stricken and Defendants should be instructed to submit a single twenty-page response.  Suntree's arguments are again without merit.  Defendants' Motion to Strike raises legitimate arguments; it is not merely a response to Suntree's motion for summary judgment.  The fact that the Motion to Strike relates to the dispositive motion is inevitable considering the fact that it seeks to have summary judgment evidence stricken.  Accordingly, Suntree's Motion

to Strike (Doc. 104) shall be denied.

The merits of Defendants' Motion to Strike Paragraphs Three, Four, and Five of John Robertson's Declaration need not be reached because Defendants are entitled to summary judgment even if those paragraphs are not stricken.  Thus, Defendants' Motion to Strike (Doc. 93) shall be denied as moot.

## II.  Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.  56(a).  When faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations."  Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997).  However, the failure to respond and create a factual dispute by the nonmoving party "does not automatically authorize the entry of summary judgment for the moving party."  Dixie Stevedores, Inc. v. Marinic Maritime, Ltd., 778 F.2d 670, 673 (11th Cir. 1985).  "Rule 56 requires the moving party to demonstrate the absence of a genuine issue of fact."  Id.

In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. Some degree of factual dispute is expected, but to successfully counter a motion for summary judgment

the factual dispute must be material and genuine. That is, the factual evidence must "affect the outcome of the suit" and must be "such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

## III.  Background

Both Suntree and EcoSense produce baffle boxes, which are "stormwater treatment structures that remove organic debris, trash, oil and other pollutants from stormwater before the stormwater reaches lakes, rivers and streams." (Tom Happel Decl., Doc. 74-6, ¶ 6).  In the fall of 2008, the City of West Melbourne ("the City") began soliciting bids for the West Melbourne Stormwater Retrofit Project ("the CWM Project").  The CWM Project required the installation of nine baffle boxes.  (CWM Project Bidding & Constr. Contract Docs. & Technical Specifications ("CWM Project Documents"), Doc. 88-33, at 53).  The City's specifications for the CWM Project required that the baffle boxes used be either Suntree's boxes "or equal" to Suntree's boxes.  (Drawing C9 of Oct. 2008 CWM Project plans ("C9 Drawing"), Doc. 88-3, at 5 n.1; Carolina Alvarez Dep., Doc. 77, at 47; Lawrence Jarvis Dep., Sept. 29, 2010 ("Sept. Jarvis Dep."), Doc. 86, at 27-28).  This requirement did not mean that the selected contractor could only use Suntree's product; rather, it was "intended to establish the type, function, appearance, and quality required" for the baffle boxes.  (CWM Project Docs. at 130).  In order for a baffle box to be deemed an "or equal," a request for approval had to be submitted via the process provided in the CWM Project Documents, and the baffle box had to be approved by the CWM Project engineer, Lawrence Jarvis.  (Id.).

In accordance with the CWM Project Documents, Derrico Construction Corporation ("Derrico") submitted a bid for the CWM Project and listed Suntree as the proposed baffle

-4-

box supplier.  (Derrico Bid Form, Doc. 88-7, at 56).  Thereafter, Derrico was awarded the contract and sought to have EcoSense's baffle boxes approved as an "or equal."  (John Robertson Dep., Doc. 33-1, at 114-15; "Or equal" Application, Doc. 88-16).  Jarvis spent somewhere between thirty-eight and forty-two hours analyzing EcoSense's baffle box–including reviewing shop drawings and conducting on-site inspections of previously installed EcoSense baffle boxes.  (Sept. Jarvis Dep. at 30-31.).  Ultimately, Jarvis determined that as a technical matter, the EcoSense baffle boxes would function the same as Suntree's baffle boxes, and he approved the "or equal" substitution.  (Sept. Jarvis Dep. at 56-57).

At some point after EcoSense's baffle boxes were approved as an "or equal," Alvarez requested that EcoSense create a maintenance presentation that provided instructions on the proper cleaning and maintenance procedures for baffle boxes.  (Randall Burden Dep., Doc. 78, at 64).  In response, EcoSense put together a presentation that included pictures of maintenance staff cleaning various baffle boxes.  (Id. at 64-65; Maintenance Presentation, Doc. 88-43).  EcoSense obtained the photographs by following the City of Rockledge's maintenance crew around and documenting the crew's cleaning processes.  (Burden Dep. at 65).  The City of Rockledge was chosen because Defendants already had a relationship with the City of Rockledge, Defendants knew that it had a capable and well-trained maintenance crew, and it is very close to Defendants' office.  (Id.).  Because both Suntree's and EcoSense's baffle boxes are installed in the City of Rockledge, the presentation included pictures of both EcoSense's and Suntree's products.  (Id.).  However, nowhere in the presentation is Suntree's name or logo shown.  (Burden Decl., Doc. 89-1, ¶ 24).  At the

-5-

request of each city, the presentation was given to the City of West Melbourne and the City of Titusville, both of which were EcoSense customers at the time.  (Id. ¶ 20).   EcoSense also posted a link to the presentation on its website for one month or less.  (Id. ¶ 21; Burden Dep. at 67).

Finally, during the course of this litigation, Defendants uncovered an old EcoSense product brochure which contained a single picture of a Suntree baffle box.  (Burden Dep. at 31-32).  As soon as that brochure was discovered, Defendants destroyed all copies except one exemplar for this case.  (Id. at 33).

## IV.  Analysis

Suntree brings claims under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (Count I), common law trademark infringement and unfair competition (Count II), and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), section 501.201, et seq., Florida Statutes (Count III).  All of these claims are based on Suntree's allegations that Defendants both contributorily and directly engaged in unfair competition and trademark infringement.  First, Suntree claims that Derrico infringed its trademark by listing Suntree as the proposed provider of the baffle boxes on Derrico's bid form even though Derrico planned to substitute EcoSense's baffle boxes once it was awarded the contract.  Suntree then asserts that Defendants contributorily infringed Suntree's trademark by "inducing" Derrico to infringe and by supplying Derrico with EcoSense's baffle boxes even though they were aware of Derrico's allegedly infringing actions.  Second, Suntree claims that Defendants directly infringed its trademark by attempting to pass off Suntree's product as being EcoSense's product in its maintenance presentation and product brochure.  Suntree also

contends that the maintenance presentation and product brochure constitute false advertising.  Defendants, on the other hand, argue that Derrico did not infringe Suntree's trademark and that even if it did, Defendants did not contribute to such infringement.  Furthermore, Defendants assert that the maintenance presentation and product brochure do not infringe Suntree's trademark and do not constitute false advertising.

Suntree has not put forth any theories of common law trademark infringement or claims under FDUTPA that would require an analysis different than the Lanham Act analysis.  "The analysis for Florida common law trademark infringement is the same as under the Lanham Act."  Automobili Lamborghini SpA v. Lamboshop, Inc., No. 2:07-CV-00266-JES-SPC, 2008 WL 2743647, *3 (M.D. Fla. June 5, 2008), adopted in Automobili Lamborghini Spa v. Lamboshop, Inc., No. 2:07-cv-266-FtM-29SPC, 2008 WL 2743643 (M.D. Fla. July 10, 2008) (citing Gift of Learning Found., Inc. v. TGC, Inc., 329 F.3d 792, 802 (11th Cir. 2003)).  Furthermore, "[t]o bring a claim under [FDUTPA], the plaintiff must have been aggrieved by the alleged unfair and deceptive act" and when that alleged act is trademark infringement, the claim "rises or falls on the success of its trademark infringement and false advertising claims."  Natural Answers, Inc. v. SmithKline Beecham Corp., 529 F.3d 1325, 1333 (11th Cir. 2008).  Thus, the following discussion is dispositive of all three Counts of Suntree's Complaint.

A.  Contributory Infringement

Section 43(a) of the Lanham Act "creates a federal cause of action for unfair competition by prohibiting the use in interstate commerce of any 'false designation of origin, or any false description or representation, including words or other symbols tending falsely

to describe or represent the same.'" <u>Lone Star Steakhouse & Saloon, Inc. v. Lone Star Steaks, Inc.</u>, 106 F.3d 355, 358 (11th Cir. 1997) (quoting 15 U.S.C. § 1125(a)).  In order to prevail on its contributory infringement claim, Suntree must first show that Derrico infringed Suntree's trademark; it then must show that Defendants either "intentionally induced" Derrico's infringement or that Defendants "knowingly participated in a scheme of trademark infringement." <u>Mini Maid Servs. Co. v. Maid Brigade Sys., Inc.</u>, 967 F.2d 1516, 1522 (11th Cir. 1992) (citing <u>Inwood Labs., Inc. v. Ives Labs., Inc.</u>, 456 U.S. 844, 853-54 (1982)). Suntree argues that when Derrico listed Suntree as a proposed vendor in its bid, it committed false designation of origin infringement.[3]

To prove false designation of origin, Suntree must show "(1) that it had trademark rights in the mark or name at issue and (2) that the other party had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." <u>Lone Star Steakhouse & Saloon</u>, 106 F.3d at 358 (quoting 15 U.S.C. § 1125(a)).  The second element focuses on the likelihood of consumer confusion.  <u>Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC</u>, 605 F.3d 931, 934-35 & n.16 (11th Cir. 2010).  Defendants do not dispute Suntree's rights in its trademark, but they argue that Suntree cannot establish likelihood of confusion.

---

[3] Suntree does not assert that the City infringed on Suntree's trademark by listing Suntree as the preferred vendor in the CWM Project Documents, even though the City's use of Suntree's mark and Derrico's use of Suntree's mark, from an infringement standpoint, were identical.  If the Court were to find that Derrico infringed on Suntree's trademark by listing it as a proposed vendor in the bid form, such a holding, taken to its logical conclusion, would result in everyone involved in the bid process–both government entities and contractors–having to get permission from every vendor before listing it as a preferred or proposed vendor to avoid infringing on the vendor's trademark.

Consumer confusion may occur at any of three junctures: during the customer's initial interest in the product, at the point of sale, or post-sale.  Suntree argues that the consumer in this case, the City, was confused about the source of the baffle boxes at the point of sale.  "Likelihood-of-confusion at the point of sale involves a purchaser's confusion as to a product's origin or sponsorship occurring at the time of purchase."  Gen. Motors Corp. v. Keystone Auto. Indus., 453 F.3d 351, 355 (6th Cir. 2006) (citing 3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 23:5 (4th ed. 1996)).  Suntree argues that the "time of purchase" was when the City accepted Derrico's bid.  This argument fails, however, because no baffle boxes were purchased at that time.

When the City accepted Derrico's bid, it entered into an agreement with Derrico that provided that Derrico would be the contractor for the CWM Project for the price stipulated in its bid.  An unambiguous part of that agreement was Derrico's right to request an "or equal" substitution for any of the proposed products listed in the bid, and because Derrico exercised that right, obviously the baffle boxes could not have been purchased until after the "or equal" substitution.  None of the baffle boxes for the CWM project were purchased at the time of the bid acceptance.  Accordingly, any confusion that existed or that was likely to exist when the City awarded Derrico the CWM Project contract constituted initial interest confusion.  In fact, all of Suntree's confusion arguments claim that Derrico engaged in a "bait and switch" practice, which is another way of describing initial interest confusion.  Syndicate Sales, Inc. v. Hampshire Paper Corp., 192 F.3d 633, 638 (7th Cir. 1999).

The Eleventh Circuit has not explicitly addressed whether initial interest confusion is sufficient to satisfy the likelihood-of-confusion element.  However, the Eleventh Circuit has

suggested that–at least where the initial interest confusion is remedied prior to the consummation of a sale–such confusion is not sufficient to satisfy the likelihood-of-confusion test  See N. Am. Med. Corp. v. Axiom Worldwide, Inc., 522 F.3d 1211, 1224 n.10 (11th Cir. 2008) (stating that if "it will be clear to the consumer that there is no relationship between the defendant and the competitor" prior to a sale, then it is not likely to cause the type of confusion actionable under the Lanham Act); see also Vital Pharm., Inc. v. Am. Body Bldg. Prods., LLC, 511 F. Supp. 2d 1303, 1318 (S.D. Fla. 2007) ("The Eleventh Circuit has not embraced [initial interest confusion], and I find it unpersuasive. When the bottom line is sales of a particular product, initial confusion prior to and concluding before the point of purchase does not seem dispositive in a likelihood-of-confusion analysis.").  However, even if such confusion were sufficient, Suntree has failed to show any likelihood of initial interest confusion.

Generally, the following seven factors are weighed to determine likelihood-of-confusion: "(1) type of mark [which relates to the strength of the mark]; (2) similarity of mark; (3) similarity of the products the marks represent; (4) similarity of the parties' retail outlets and customers; (5) similarity of advertising media; (6) defendant's intent; and (7) actual confusion."  Aronowitz v. Health-Chem Corp., 513 F.3d 1229, 1239 (11th Cir. 2008). Nevertheless, the Eleventh Circuit has recognized that "'[e]ach case presents its own complex set of circumstances and not all of these factors may be particularly helpful in any given case'" Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc., 508 F.3d 641, 650 (11th Cir. 2007) (quoting Homeowners Grp., Inc. v. Home Mktg. Specialists, Inc., 931 F.2d 1100, 1107 (6th Cir. 1991)).  Rather than mechanically applying these factors without regard to context,

-10-

courts must focus on the "'ultimate question'" of "'whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way.'"[4] Id.

Initial interest confusion occurs when the defendant "lur[es] potential customers away from [the plaintiff] by initially passing off its goods as those of the [plaintiff], even if confusion as to the source of the goods is dispelled by the time any sales are consummated." Dorr-Oliver, Inc. v. Fluid-Quip, Inc., 94 F.3d 376, 382 (7th Cir. 1996). For example, in Grotrian, Helferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons, 523 F.2d 1331, 1342 (2d Cir. 1975), the defendant produced "Grotrian-Steinweg" pianos and the plaintiff produced the world-renowned "Steinway" pianos. The court explained:

> The issue here is not the possibility that a purchaser would buy a Grotrian-Steinweg thinking it was actually a Steinway or that Grotrian had some connection with Steinway and Sons. The harm to Steinway, rather, is the likelihood that a consumer, hearing the "Grotrian-Steinweg" name and thinking it had some connection with "Steinway", would consider it on that basis. The "Grotrian-Steinweg" name therefore would attract potential customers based on the reputation built up by Steinway in this country for many years. The harm to Steinway in short is the likelihood that potential piano purchasers will think that there is some connection between the Grotrian-Steinweg and Steinway pianos.

Id. Similarly, Suntree is not suggesting that the City allowed EcoSense's baffle boxes to be

---

[4]Applying this logic, factors two through five are inappropriate in this case because they all would require a comparison of Suntree's and Defendants' marks; such comparison is illogical in this case because Derrico used Suntree's mark to refer to Suntree's own product. See Century 21, 425 F.3d at 224-25 ("[L]ooking at [the degree of similarity between the owner's mark and the alleged infringing mark] does not leave any room for the consideration of the context of the use—i.e., that the mark is being used to describe the plaintiff's own product."). Factor one is also irrelevant because the strength of Suntree's mark is the very reason that its use is not confusing–Suntree is so well known in the industry that the City knew exactly what Derrico was referring to when it used Suntree's name.

installed thinking that they were actually Suntree's product.  However, unlike the trademarks

at issue in <u>Grotrian</u>, this is not a case where EcoSense's mark was so similar to Suntree's

mark that the consumer would initially become interested in EcoSense's product because

it mistakenly thought the product was manufactured by Suntree.  EcoSense's and Suntree's

marks are entirely different and could not be confused.  <u>See</u> <u>Brookfield Commc'ns, Inc. v.</u>

<u>W. Coast Entm't Corp.</u>, 174 F.3d 1036, 1054 (9th Cir. 1999) ("Where the two marks are

entirely dissimilar, there is no likelihood-of-confusion . . . .  Nothing further need be said.").

    Moreover, Derrico merely used Suntree's mark to truthfully refer to Suntree's own

product.[5]  Such use is not confusing "because it does not imply sponsorship or endorsement

by the trademark holder."  <u>New Kids on the Block v. News Am. Publ'g, Inc.</u>, 971 F.2d 302,

308 (9th Cir. 1992).  In fact, many circuits have held that "[s]uch nominative use of a mark

. . . lies outside the strictures of trademark law."  <u>Id.</u>; <u>see also</u> <u>Bd. of Supervisors for La. State</u>

<u>Univ. Agric. & Mech. Coll. v. Smack Apparel Co.</u>, 550 F.3d 465, 488 (5th Cir. 2008) (holding

that it is permissible to "use another's mark truthfully to identify another's goods or services");

<u>Century 21 Real Estate Corp. v. LendingTree, Inc.</u>, 425 F.3d 211, 231-32 (3d Cir. 2005)

_____

    [5] Suntree asserts that Derrico was not truthful because it proposed to use Suntree's product but planned on substituting EcoSense's product and that instead Derrico should have obtained "pre-approval" to use EcoSense's baffle boxes rather than propose to use Suntree's product and later request an "or equal" substitution.  This argument is irrelevant to the trademark infringement inquiry, which focuses on confusion.  In any event, it was infeasible, and likely impossible, to obtain such pre-approval.  (<u>See</u> Alvarez Dep. at 57 ("[W]hy would a contractor spend time and money on [obtaining approval] prior to the bid if we don't know that he's going to be the lowest bidder . . . ?  [W]e would not go through [the approval] process before all the bids have been received."); Sept. Jarvis Dep. at 30 (noting that pre-approving products was beyond the scope of his contract); CWM Project Docs. at 62 (providing that "or equal" approval "will not be considered by the Engineer until after the Effective Date of the Agreement")).

(recognizing "nominative fair use" as an affirmative defense to trademark infringement) ; c.f. Tiffany (NJ) Inc. v. eBay Inc., 600 F.3d 93 (2d Cir. 2010) (recognizing the underlying principles of nominative fair use); Universal Commc'n Sys., Inc. v. Lycos, Inc., 478 F.3d 413, 424 (1st Cir. 2007) (same).

Even accepting as true Suntree's theory that Derrico and Defendants pre-planned EcoSense's substitution,[6] Derrico's intent was not to confuse the City into thinking EcoSense's product was somehow related to Suntree's product.  Also, there is no evidence that Derrico's use of Suntree's mark suggested affiliation, sponsorship, or endorsement by Suntree, and despite Suntree's vehement arguments to the contrary, there is no evidence of actual confusion.  In fact, Suntree does not even allege that the City ever thought EcoSense's product was associated with Suntree's product.

Suntree is apparently trying to stretch the definition of "confusion" beyond its boundaries to include a contractor agreeing to use a more expensive product for a cheaper price and then convincing the fully-informed and sophisticated consumer to use a cheaper but technically equivalent product; this is not actionable confusion under the Lanham Act, it is merely a competitive business practice.  Cf. Norton Tire Co. v. Tire Kingdom Co., 858 F.2d 1533, 1534-35 (11th Cir. 1988) ("Tire Kingdom sets low prices on its name brand tires

_____

[6] Although Suntree makes extensive arguments that Derrico and Defendants planned to substitute EcoSense's product from the very beginning, whether or not such a plan existed is immaterial.  As a practical matter, any "or equal" substitution had to be approved by Jarvis and by the City, so it does not matter what Derrico and Defendants did or did not plan, because they had no power to carry out that plan.  Moreover, any plan that may have existed did not make it likely the City would believe that Suntree's and EcoSense's products were affiliated.  On the contrary, the "or equal" substitution process made it unmistakably clear that Suntree's and EcoSense's products were in no way related.

-13-

. . . to lure customers into its stores; salesmen then try to convince the customer to buy private brand tires instead [because the private brand tires have a higher profit margin]. . . . While Tire Kingdom's sales tactics may have constituted sharp practice, they are not false representations under section 43(a) of the Lanham Act.").  Furthermore, prior to purchasing the baffle boxes, the City knew exactly which baffle box product it was getting.

In sum, Suntree alleges initial interest confusion, which is not actionable confusion in the Eleventh Circuit.  Furthermore, even if it were actionable, Suntree has failed to establish likelihood of confusion.  Accordingly, Suntree has failed to prove any direct trademark infringement by Derrico,[7] and Suntree's claim against Defendants for contributory infringement necessarily fails.

B.  Direct Infringement

Suntree next asserts that Defendants directly infringed its trademark by using pictures of Suntree's baffle boxes in the maintenance presentation and the product brochure created by Defendants.  Suntree asserts that this use constitutes both false designation of origin and false advertising under the Lanham Act.

i.  False Designation of Origin

Suntree asserts that by placing pictures of Suntree's baffle boxes in its maintenance presentation and product brochure, Defendants falsely represented that those baffle boxes

---

[7] Suntree also makes a half-hearted argument that Derrico's bid constituted false advertising.  However, such a claim must fail because the bid was not an advertisement or promotion under the Lanham Act.  Derrico and Suntree are not in competition, and the bid form was not distributed sufficiently to constitute an advertisement or promotion.  See Part IV.B.ii infra for a full discussion of what constitutes an advertisement or promotion under the Lanham Act.

originated with EcoSense rather than Suntree.  This type of false designation of origin claim is called "reverse passing off."  "Passing off . . . occurs when a producer misrepresents his own goods or services as someone else's. 'Reverse passing off,' as its name implies, is the opposite: The producer misrepresents someone else's goods or services as his own."  Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 27 n.1 (2003) (internal citations omitted).

In order for Suntree to prevail on its reverse passing off claim, it must show "(1) that the work at issue originated with the plaintiff; (2) that origin of the work was falsely designated by the defendant; (3) that the false designation of origin was likely to cause consumer confusion; and (4) that the plaintiff was harmed by the defendant's false designation of origin."  N. Am. Clearing, Inc. v. Brokerage Computer Sys., Inc., 666 F. Supp. 2d 1299, 1309 (M.D. Fla. 2009) (citing Syngenta Seeds, Inc. v. Delta Cotton Co-op., Inc., 457 F.3d 1269, 1277 (Fed. Cir. 2006)).  Even assuming that the origin of Suntree's baffle boxes was falsely designated, Suntree's claim fails because there is no evidence of likelihood-of-confusion or of harm to Suntree.

As noted previously, seven factors are weighed to determine likelihood-of-confusion: (1) type of mark; (2) similarity of mark; (3) similarity of the products the marks represent; (4) similarity of the parties' retail outlets and customers; (5) similarity of advertising media; (6) defendant's intent; and (7) actual confusion.  However, in reverse passing off cases, factors one through five are again "irrelevant . . . because they deal with the relationship between the plaintiff's and defendant's trademarks, not their products."  Johnson v. Jones, 149 F.3d 494, 503 (6th Cir. 1998).  Therefore, the focus of this likelihood-of-confusion inquiry will be

on factor six–Defendants' intent–and factor seven–actual confusion.

It is clear from the record that the Defendants did not intend to pass off Suntree's product as EcoSense's product. The maintenance presentation was produced at the request of cities that already had baffle boxes in place and wanted a training presentation for their maintenance crews, and there is no evidence that Defendants ever expressly claimed that all of the baffle boxes pictured in the maintenance presentation were EcoSense's product. Also, the pictures of Suntree's product ended up in the presentation because the City of Rockledge had both types of boxes installed. EcoSense chose to document the City of Rockledge's crew because EcoSense knew the crew was competent, not because Suntree's products would be included in the presentation. Furthermore, the purpose of putting the maintenance presentation on EcoSense's website was not to showcase EcoSense's products–which would have been redundant since information about EcoSense's products was already available on the website–it was to show potential customers that EcoSense would provide appropriate training and support after the installation of EcoSense's products. (Burden Dep. at 68).

Additionally, what little evidence there is in the record about the product brochure indicates that the use of a picture of Suntree's product was a mistake rather than an intentional "misappropriation of the product or goodwill of a competitor." Can-Am Eng'g Co. v. Henderson Glass, Inc., 814 F.2d 253, 257 (6th Cir. 1987). The "generic" picture of Suntree's baffle box does not indicate that it is a Suntree product, and it was placed in the brochure by a clerical staff member who was unaware that it was a Suntree product. (Burden Decl. ¶ 33). Moreover, as soon as Defendants became aware of the issue, all of

-16-

the copies of the brochure in Defendants' possession were destroyed except for one copy to be used as evidence in this case.  (Id.); see also Can-Am Eng'g, 814 F.2d at 257 (noting that the "swift and effective remedial action [that the defendant] undertook immediately upon being notified" of mistakenly using a competitor's photograph in its advertising brochure was evidence that it did not intend to misrepresent the goods as its own).

Suntree's argument that there was actual confusion caused by the maintenance presentation is similarly without merit.  The only alleged actual confusion Suntree points to is in the deposition of Janice Szuflita who, at the time of the CWM Project, was a project manager for the City.  (Szuflita Dep., Doc. 87, at 10).  Szuflita's involvment in the CWM Project was minimal–she merely had a few conversations with Alverez and Jarvis regarding the project.  (Id. at 16).  Szuflita did not see the maintenance presentation in connection with the CWM Project.  (Id. at 90).  During her deposition, Szuflita viewed the maintenance presentation for the first time and, upon prompting from Suntree's counsel, agreed that the "presentation as a whole" gave the impression that all of the photographs were of EcoSense's product.

Suntree has presented no examples of actual customers who were confused. Although Suntree asserts that Szuflita constitutes an actual customer, she did not view the presentation under the circumstances that a customer normally would–during a presentation on how to clean baffle boxes.  Moreover, she had very little to do with the CWM Project and was not involved in determining which baffle boxes to use.  Even if Szuflita constitutes a single customer who was actually confused, one de minimis example of confusion, without more, does not satisfy the likelihood-of-confusion inquiry. 3 J. Thomas McCarthy, McCarthy

on Trademarks and Unfair Competition § 23:14 (4th ed. 1996); see also DeCosta v. Columbia Broad. Sys., Inc., 520 F.2d 499, 514 (1st Cir. 1975).

As far as the product brochure is concerned, Suntree does not even argue that it caused actual confusion, and there is no evidence in the record regarding any such confusion.  Accordingly, Suntree has failed to show likelihood-of-confusion relating to either the maintenance presentation or the product brochure, and therefore it has not proven its reverse passing off claim.

Moreover, even if Suntree had shown a likelihood-of-confusion, it has failed to show another essential element of its reverse passing off claim–that it was harmed by the use of the photographs in either the maintenance presentation or the product brochure.  N. Am. Clearing, 666 F. Supp. 2d at 1309.  There is no evidence that any customers ever actually received the product brochure or that any consumer considered the maintenance presentation when deciding which baffle box supplier to use.  (See Burden Decl. ¶¶ 26-30 (explaining the timing of all of Defendants' successful baffle box bids in relation to the time the maintenance presentation was on EcoSense's website) and ¶ 20 ("At the time the presentations were given to the respective cities, they were already pre-existing customers and had no pending plans for new baffle boxes.")).

As the foregoing demonstrates, Suntree has failed to show that the maintenance presentation or the product brochure were likely to cause confusion, and even if they were likely to cause confusion, Suntree has not shown that it was harmed by such confusion. Accordingly, Suntree's reverse passing off claim fails.

ii.  False Advertisement

-18-

In addition to its reverse passing off claim, Suntree asserts that the maintenance presentation and product brochure constitute false advertising.  It is a violation of the Lanham Act for "[a]ny person . . . [to] use[] in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which[,] . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities."  15 U.S.C. § 1125(a)(1)(B).

In order for Suntree to prevail on its false advertising claim, it must first show that the brochure and the presentation constitute "commercial advertising or promotions."  The Lanham Act does not define "commercial advertising or promotions," and the legislative history does not provide much clarification.  See Fuente Cigar, Ltd v. Opus One, 985 F. Supp. 1448, 1454 (M.D. Fla. 1997) ("[The phrase 'commercial advertising or promotion'] is clearly limiting language, but the legislative history of the statute reveals an apparent schizophrenia as to how limiting it is.").  The only unanimity among the circuits that have addressed the issue appears to be that a threshold requirement for something to constitute a "commercial advertising or promotion" is that it must at least fall within the meaning of "commercial speech" pursuant to First Amendment jurisprudence.  See Podiatrist Ass'n, Inc. v. La Cruz Azul de Puerto Rico, Inc., 332 F.3d 6, 19 (1st Cir. 2003); Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc., 314 F.3d 48, 56-57 (2d Cir. 2002); First Health Grp. Corp. v. BCE Emergis Corp., 269 F.3d 800, 803-04 (7th Cir. 2001); Proctor & Gamble Co. v. Haugen, 222 F.3d 1262, 1270 (10th Cir. 2000); Porous Media Corp. v. Pall Corp., 173 F.3d

1109, 1120 (8th Cir. 1999); Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co., 173 F.3d 725, 735 (9th Cir. 1999); Seven-Up Co. v. Coca-Cola Co., 86 F.3d 1379, 1384 (5th Cir. 1996); Semco, Inc. v. Amcast, Inc., 52 F.3d 108, 111-12 (6th Cir. 1995).

Most circuits narrow the definition of "commercial advertising or promotion" significantly and hold that only a portion of commercial speech constitutes "commercial advertising or promotions" under the Lanham Act.  See e.g. First Health Grp., 269 F.3d at 803 ("Any plan to occupy all of the constitutionally permitted space would have used the phrase 'commercial speech,' rather than 'advertising or promotion.'").  However, there is not a consensus among the circuits on how, exactly, to narrow the definition.

The most prevalent test for determining whether a representation constitutes "commercial advertising or promotion" was promulgated in Gordon & Breach Science Publishers S.A. v. American Institute of Physics, 859 F. Supp. 1521 (S.D.N.Y. 1994), and has since been adopted, at least in part, by five circuits.  See Podiatrist Ass'n, 332 F.3d at 19; Fashion Boutique, 314 F.3d at 56-57; Proctor & Gamble, 222 F.3d at 1270; Coastal Abstract Serv., 173 F.3d at 735; Seven-Up, 86 F.3d at 1384.  The Gordon & Breach test provides:

> In order for representations to constitute "commercial advertising or promotion" under Section 43(a)(1)(B), they must be: (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services. While the representations need not be made in a "classic advertising campaign," but may consist instead of more informal types of "promotion," the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry.

859 F.Supp. at 1535-36.  Other circuits prefer a more flexible analysis based on the

"statutory text."  See First Health Grp., 269 F.3d at 803-04 (applying the "normal usage" of the word "advertisement" and explaining that "[a]dvertising is a form of promotion to anonymous recipients, as distinguished from face-to-face communication").  However, when the Gordon & Breach court developed its test, it examined not only the statutory text of the Lanham Act but also its legislative history and other cases which had applied the Lanham Act beyond the "traditional ad campaign."  859 F. Supp. at 1532-36.  Furthermore, because the Lanham Act does not define the term "commercial advertising or promotion," the statutory text, while important, can only take us so far.  Along with at least four other district courts in the Eleventh Circuit, I find the Gordon & Breach test to be a well-grounded and helpful approach and will apply it here.  See VG Innovations, Inc. v. Minsurg Corp., No. 8:10-cv-1726-T-33MAP, 2011 WL 1466181, at *5 (M.D. Fla. Apr. 8, 2011) (citing cases).

Factors one and two are undisputed in this case, but factors three and four–whether Defendants' product brochure and maintenance presentation were used for the purpose of influencing consumers to buy EcoSense's goods or services and whether they were disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry–are heavily contested.  As discussed in the reverse passing-off analysis in Part IV.B.i supra, the purpose of the maintenance presentation was not to influence consumers to purchase EcoSense's product but rather to provide training to those who had already done so.  Additionally, the maintenance presentation was only provided to two cities and was on EcoSense's website for a month or less.  Such actions did not result in sufficient dissemination to the relevant purchasing public.  Accordingly, the maintenance presentation does not constitute an "advertisement or promotion" under the Lanham Act.

Although there is minimal evidence relating to the product brochure, it was presumably created to get consumers interested in EcoSense's products.  Nevertheless, Suntree has failed to present any evidence relating to the brochure's dissemination, and, due to the sophistication of the consumers, it is unlikely that a simple product brochure could influence them to purchase EcoSense's baffle boxes.

Even assuming arguendo that the maintenance presentation and the product brochure did constitute advertisements or promotions, they do not constitute false advertising.  In order to establish that the maintenance presentation and product brochure constitute false advertising, Suntree must prove that: "(1) [they were] false or misleading, (2) [they] deceived, or had the capacity to deceive, consumers, (3) the deception had a material effect on purchasing decisions, (4) the misrepresented product or service affects interstate commerce, and (5) [Suntree] has been–or is likely to be–injured as a result of the false advertising."  Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc., 299 F.3d 1242, 1247 (11th Cir. 2002) (citing ALPO Petfoods, Inc. v. Ralston Purina Co., 913 F.2d 958, 964 (D.C.Cir. 1990)).

"The first element of a false advertising claim is 'satisfied if the challenged advertisement is literally false, or if the challenged advertisement is literally true, but misleading.'"  Osmose, Inc. v. Viance, LLC, 612 F.3d 1298, 1308 (11th Cir. 2010) (quoting Johnson & Johnson Vision Care, 299 F.3d at 1247).  When determining whether a statement is literally false or misleading, "courts must analyze the message conveyed in full context," and "must view the face of the statement in its entirety . . . ."  Id. (internal quotations omitted). In doing so, "[t]he ambiguity of the statement at issue, or the lack thereof, is significant.

Statements that have an unambiguous meaning . . . may be classified as literally false.  As the meaning of a statement becomes less clear, however, and it becomes susceptible to multiple meanings, the statement is more likely to be merely misleading."  Id. (internal citations omitted).

Neither the maintenance presentation nor the product brochure mentions Suntree's product.  The only alleged "false statement" is the juxtaposition of a picture of Suntree's product to statements about EcoSense's products.  Due to the ambiguity of this representation, it is not literally false.  At most, this may be a misleading representation.

If an advertisement is true but misleading, "then the movant is required to present evidence of deception."  Id. at 1319.  In order to prove deception, consumer survey research is often "key" evidence, Hickson Corp. v. Northern Crossarm Co., 357 F.3d 1256, 1261 (11th Cir. 2004), but, if "'full-blown consumer surveys or market research'" are not available, the plaintiff still must provide some sort of expert testimony or similar evidence.  Johnson & Johnson Vision Care, 299 F.3d at 1247.  Suntree has provided no survey evidence or expert testimony regarding customer deception.  The only evidence Suntree has provided is the same deposition testimony of Szuflita that it presented to try and establish actual confusion: that the "presentation as a whole" gave the impression that all of the photographs were of EcoSense's product.  Szuflita is not an expert, and such a singular statement does not establish deception.[8]

_____

[8] It is unclear whether Suntree must prove actual deception or just that the advertisements had the tendency to deceive consumers; however, "even if the lower standard [is applicable], [Suntree] must produce some evidence of consumer reaction," Johnson & Johnson Vision Care, 299 F.3d at 1247 n.3, and Szuflita's testimony is

Suntree has also failed to establish that any theoretical deception caused by the maintenance presentation or the product brochure would be material.  "In order to establish materiality, the plaintiff must demonstrate that 'the defendant's deception is likely to influence the purchasing decision.'"  Osmose, 612 F.3d 1298 (quoting Johnson & Johnson Vision Care, 299 F.3d at 1250).  The evidence, however, reveals that neither the representations the maintenance presentation nor those in the product brochure are likely to have any influence on purchasing decisions.  Bids for projects are mainly determined by the price of the overall bid, (see Alvarez Dep. at 57), and decisions about which specific products will be used on these types of projects are made by engineers who look at product specifications, not advertisements, (Szuflita Dep. at 172-74).

Finally, as discussed in the reverse passing off analysis, Suntree has not shown that it was injured by the maintenance presentation or the product brochure.  Also, because EcoSense destroyed all of the brochures except for the one in evidence, there is no likelihood that Suntree will be injured by it in the future.  And, because EcoSense no longer has the maintenance presentation on its website, it is likely that the only customers who will see the presentation are those who have already purchased EcoSense's baffle boxes and clearly understand that EcoSense is not associated with Suntree.

In sum, Suntree has failed to provide sufficient evidence that the maintenance presentation and the product brochure are advertisements or promotions under the Lanham Act.  Additionally, even if they did constitute advertisements or promotions,  Suntree has

_____

insufficient.

failed to establish three out of the five false advertisement elements.  Accordingly, Suntree's false advertisement claim fails.

## V.  Conclusion

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** that:

1.  Suntree's Motion for Summary Judgment (Doc. 73) and Suntree's Motion to Strike Defendants' Summary Judgment Filings for Exceeding the Page Limit (Doc. 104) are **DENIED**;

2.  EcoSense's Motion for Summary Judgment (Doc. 75) and Dussich's Motion for Summary Judgment (Doc. 76) are **GRANTED**;

3.  Plaintiff's Partially Unopposed Motion to Extend the Time to Seek Attorneys' Fees (Doc. 92) is **GRANTED**, and any such motion shall be filed within fourteen (14) days of entry of the judgment provided for in paragraph 5 below;

4.  Defendants' Motion to Strike Paragraphs Three, Four, and Five of John Robertson's Declaration (Doc. 93), Defendants' Motion in Limine (Doc. 121), and Suntree's Motion in Limine (Doc. 122) are **DENIED as moot**; and

5.  The Clerk is directed to enter a judgment in favor of Defendants and thereafter to close this file.

**DONE** and **ORDERED** in Chambers, Orlando, Florida this 20th day of July, 2011.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record

-25-