# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**SUNTREE TECHNOLOGIES, INC.,**

　　　　**Plaintiff,**

**v.**　　　　　　　　　　　　　　　　　　**Case No:  6:09-cv-1945-Orl-28GJK**

**ECOSENSE INTERNATIONAL, INC.**
**and GEORGE DUSSICH,**

　　　　**Defendants.**

_____

### REPORT AND RECOMMENDATION

　　This cause came on for consideration, without oral argument, on the following motions:

| | |
|---|---|
| **MOTION:** | **DEFENDANTS' RENEWED MOTION FOR DETERMINATION OF ENTITLEMENT TO ATTORNEYS' FEES (Doc. No. 159)** |
| **FILED:** | **September 19, 2012** |
| **THEREON** it is **RECOMMENDED** that the motion be **DENIED**. | |

| | |
|---|---|
| **MOTION:** | **DEFENDANTS' MOTION FOR DETERMINATION OF ENTITLEMENT TO APPELLATE ATTORNEYS' FEES (Doc. No. 191)** |
| **FILED:** | **December 18, 2012** |
| **THEREON** it is **RECOMMENDED** that the motion be **DENIED**. | |

## I.  BACKGROUND

Plaintiff, Suntree Technologies, Inc. (hereafter "Suntree"), and Ecosense International Inc. (hereafter "Ecosense"), are competitors who manufacture baffle boxes.  Doc. No. 123 at 4.[1] A baffle box is a stormwater treatment structure that removes pollutants from stormwater before it reaches lakes, rivers or streams.  Doc. No. 123 at 4.  In the Fall of 2008, the City of West Melbourne (hereafter "City") solicited bids for a project (hereafter "Project") that required the installation of nine baffle boxes.  Doc. No. 123 at 4.  The City's bidding documents required either Suntree's baffle boxes be installed or an approved equal that met or exceeded Suntree's specifications.  *See Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 593 F.3d 1338, 1341 (11th Cir. 2012).

Derrico Construction Corporation (hereafter "Derrico") submitted a bid for the Project, which listed Suntree as the baffle box supplier.  *Id.* at 1342.  After being awarded the contract, Derrico requested Ecosense's baffle boxes be approved as an equal to Suntree's baffle boxes.  *Id.* The City approved Ecosense's baffle boxes as an equal substitute and Derrico installed them.  *Id.* After the Project was completed, a Project engineer requested Ecosense prepare a power point presentation to train the City's employees on the proper cleaning and maintenance procedures for the baffle boxes.  *Id.*  The presentation was given to the City and City of Titusville, and showed City of Rockledge employees cleaning and maintaining baffle boxes manufactured by both Suntree and Ecosense.  *Id.*  The presentation did not identify Suntree by name.  *Id.*[2]  During the litigation, Ecosense discovered a product brochure that contained one picture of a Suntree baffle

---

[1] The facts are primarily taken from the Court's order on the parties' cross-motions for summary judgment (Doc. No. 123) and the Eleventh Circuit's decision in *Suntree Technologies, Inc. v. Ecosense International, Inc.*, 593 F.3d 1338, 1341 (11th Cir. 2012), which addresses Suntree's appeal of the Court's order on the cross-motions for summary judgment.

[2]  At the time the presentation was given, the City and City of Titusville were existing customers of Ecosense.  *See Suntree Techs.*, 693 F.3d at 1342.

box.  Doc. No. 123 at 6.  Ecosense destroyed all copies of the brochure, except one that was used as an exemplar in this case.  Doc. No. 123 at 6.

On December 9, 2009, Suntree filed an Amended Complaint against Ecosense, George Dussich[3] (hereafter "Dussich," and collectively with Ecosense as "Defendants") and Derrico, alleging false designation of origin and false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125, Florida common law trademark infringement and unfair competition, and violation of the Florida Deceptive and Unfair Trade Practices Act, Florida Statutes § 501.201, *et seq.* (hereafter "FDUTPA").  Doc. No. 11.[4]  These claims are predicated on Suntree's allegations that Defendants directly and contributorily infringed on its trademark and engaged in unfair competition.  Doc. No. 123 at 6.  Suntree asserts that Ecosense's power point presentation and product brochure directly infringed its trademark by attempting to pass off Suntree's baffle box as Ecosense's baffle box.  Doc. No. 123 at 6.  Suntree asserts that Derrico directly infringed its trademark by listing Suntree as the baffle box provider on the bid forms, despite intending to substitute Ecosense's baffle boxes once the contract was awarded.  Doc. No. 123 at 6.  Suntree contends that Defendants contributorily infringed its trademark by inducing Derrico's infringement and supplying baffle boxes despite knowing of Derrico's infringement.  Doc. No. 123 at 6.

On July 20, 2011, the Court denied Suntree's motion for summary judgment and granted Defendants' motion for summary judgment.  Doc. No. 123.  In deciding the motions, the Court analyzed all of Suntree's claims under the Lanham Act because Suntree did not "put forth any theories of common law trademark infringement or claims under FDUTPA that would require an analysis different than the Lanham Act analysis."  Doc. No. 123 at 7.  The Court found that

---

[3]  Dussich is Ecosense's president.  Doc. No. 123 at 1.

[4]  On February 4, 2010, Derrico was dismissed from the case. Doc. No. 21.

Suntree's claim of contributory infringement was predicated on a theory of initial interest confusion, which is not actionable in the Eleventh Circuit, and, even if actionable, Suntree failed to establish a likelihood of confusion.  Doc. No. 123 at 14.  As a result, the Court found that Suntree "failed to prove any direct trademark infringement by Derrico, and Suntree's claim against Defendants for contributory infringement necessarily fails."  Doc. No. 123 at 14.

The Court indicated that Suntree's claim of direct infringement was predicated on two theories:  false designation of origin and false advertisement.  Doc. No. 123 at 14, 18.  In regard to Suntree's claim of false designation of origin based on reverse passing off, the Court ruled that Suntree "failed to show that the maintenance presentation or the product brochure were likely to cause confusion, and even if they were likely to cause confusion, Suntree has not shown that it was harmed by such confusion."  Doc. No. 123 at 18.  Similarly, the Court ruled that Suntree "failed to provide sufficient evidence that the maintenance presentation and the product brochure are advertisements or promotions under the Lanham Act.  Additionally, even if they did constitute advertisements or promotions, Suntree has failed to establish three out of the five false advertisement elements."  Doc. No. 123 at 24-25.  Based on the Court's determination that Suntree failed to present sufficient evidence to prove its claims of trademark infringement, the Court granted Ecosense's motion summary judgment.  Doc. No. 123 at 25.

Suntree appealed the Court's order on the parties' motions for summary judgment (Doc. No. 141) and the Eleventh Circuit issued its decision on September 5, 2012.  *See Suntree Techs.*, 593 F.3d 1338.  The Eleventh Circuit affirmed the Court's ruling on Suntree's claim of contributory infringement because Suntree failed to present any evidence that Derrico intended to deceive the City regarding the supplier of baffle boxes or hide its intention to seek an alternate supplier of baffle boxes.  *Id.* at 1347.  The Eleventh Circuit also stated that Suntree failed to

present evidence that the City was confused about the quality of baffle boxes required or that a contractor could request an approved equal substitute. *Id.*[5]

With respect to Suntree's false designation of origin claim, the Eleventh Circuit affirmed the Court's ruling because Suntree failed to present evidence that Ecosense intended to portray Suntree's product as its own or any confusion on the part of the Project's engineers. *Id.* at 1348. The Eleventh Circuit likewise determined that Suntree's claim of false advertising failed because the record demonstrated that the power point presentation was created to train existing customers, not promote Ecosense's products, and Suntree failed to present any evidence that the product brochure was disseminated to any potential customers. *Id.* at 1349. Based on the foregoing, the Eleventh Circuit affirmed the Court's denial of Suntree's motion for summary judgment and the granting of summary judgment in favor of Ecosense. *Id.* at 1350.

On September 19, 2012, Defendants moved for an order determining that they are entitled to an award of attorney's fees (hereafter "Motion for Fees"), pursuant to 15 U.S.C. § 1117(a), and Section 501.2105(1), Florida Statutes. Doc. No. 159. On October 24, 2012, Suntree filed its response. Doc. No. 165. On November 26, 2012, Defendants filed their reply. Doc. No. 178. On December 18, 2012, Defendants moved for an order determining they are entitled to an award of appellate attorney's fees (hereafter "Motion for Appellate Fees"), moving under the same statutory provisions as their Motion for Fees. Doc. No. 191. On January 14, 2013, Suntree filed its response. Doc. No. 197.

## II. LAW

15 U.S.C. § 1117(a) provides that a "court in exceptional cases may award reasonable attorney fees to the prevailing party." In the Eleventh Circuit, it appears that there is a bifurcated

---

[5] Because Suntree failed to present evidence of an intent to mislead or confuse, or actual confusion, the Eleventh Circuit did not address whether initial interest confusion is actionable. *See Suntree Techs.*, 593 F.3d at 1347.

standard to determining whether a case is "exceptional." *See Welding Servs., Inc. v. Forman*, 301 F. Appx. 862, 862 (11th Cir. 2008) (quoting *Nat'l Ass'n of Prof'l Baseball Leagues, Inc. v. Very Minor Leagues, Inc.*, 223 F.3d 1143, 1148 (10th Cir. 2000) (determining whether a case is exceptional depends on which party prevails and if attorney's fees are awarded against a plaintiff the "'court looks to the plaintiff's conduct in bringing the lawsuit and the manner in which it is prosecuted.")). If the plaintiff prevails, a case is exceptional when the case can be characterized as "'malicious, fraudulent, deliberate and willful.'" *Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.*, 253 F.3d 1332, 1335 (11th Cir. 2001) (quoting *Dieter v. B & H Indus. of S.W. Fla., Inc.*, 880 F.2d 322, 329 (11th Cir. 1989)); *see also Lipscher v. LRP Publ'ns, Inc.*, 266 F.3d 1305, 1319 n.10 (11th Cir. 2001) (citing legislative history). If the defendant prevails, a case is exceptional when there is evidence of fraud or bad faith. *Lipscher*, 266 F.3d at 1320.[6] An award of attorney's fees to a prevailing defendant "may be justified when a plaintiff has brought an obviously weak Lanham Act claim and the evidence shows that the plaintiff acted in bad faith and with an improper motive." *Welding Servs.*, 301 F. Appx. at 862-63. A finding that a case is exceptional does not mandate an award of attorney's fees. Rather, determining whether a case is exceptional and, if so, whether to award attorney's fees remains within the court's sound discretion. *See Dieter*, 880 F.2d at 329.

Section 501.2105, Florida Statutes (2012), provides that the prevailing party in a FDUTPA suit "may receive his or her reasonable attorney's fees and costs from the nonprevailing party." The plain language of this statute indicates that a "prevailing party . . .

---

[6] In *Lipscher*, 266 F.3d at 1320, the defendant argued that the trial court erred by using a bad faith standard, instead of something less than bad faith, in denying its motion for attorney's fees under the Lanham Act. The Eleventh Circuit stated that "under *Safeway* [*Stores, Inc. v. Safeway Discount Drugs, Inc.*, 675 F.2d 1160 (11th Cir. 1982)], the correct standard in the Eleventh Circuit is fraud or bad faith," but noted that even under the more lenient standard defendant's argument failed. *Id.* In light of this finding, the Eleventh Circuit left the "determination as to the continued validity of *Safeway* to another case." *Id.*

may, according to the court's discretion, recover his reasonable attorney's fees." *N. Am. Clearing, Inc. v. Brokerage Computer Sys., Inc.*, 395 F. Appx. 563, 565 (11th Cir. 2010).  In determining whether to award attorney's fees, courts have considered the following factors:  1) the scope and history of the litigation; 2) ability of the opposing party to pay; 3) whether awarding fees would deter others from acting in similar circumstances; 4) the merits of the parties' positions, including the degree of the opposing party's culpability or bad faith; 5) whether the claim was frivolous, unreasonable or groundless; 6) whether the defenses raised were done primarily to frustrate or stall; and 7) whether the claim sought to resolve a significant legal question under FDUTPA.  *See Humane Soc'y of Broward County, Inc., v. Fla. Humane Soc'y*, 951 So. 2d 966 (Fla. 4th DCA 2007); *Hetrick v. Ideal Image Dev. Corp.*, No. 8:07-cv-871-T-33TBM, 2011 WL 3566607 at *3 (M.D. Fla. July 26, 2011); and *Chastain v. N.S.S. Acquisition Corp.*, No. 08-81260-CIV, 2010 WL 5463859 (S.D. Fla. Dec. 29, 2010).

## III. ANALYSIS

Defendants' arguments in their motions are substantially similar and are addressed collectively.  Broadly speaking, Defendants contend that Suntree's suit was completely meritless and brought for an improper purpose or in bad faith.  Defendants contend that Suntree's claims against Dussich were baseless because the only evidence implicating Dussich was John Robertson's (hereafter "Robertson") declaration, dated January 13, 2010, which Suntree relied upon in its motion for summary judgment.  Doc. No. 159 at 7.[7]  In short, Defendants argue that Robertson and Suntree presented fabricated statements to the Court via Robertson's declaration and continued to rely on the false statements even after they were proved to be false.

In his declaration, Robertson stated that Dussich contacted him in the Fall 2008, and offered to supply Ecosense's baffle boxes for the Project.  Doc. No. 74-1 at 1 ¶3.  Robertson

---

[7] Robertson is Derrico's president.  Doc. No. 74-1 at 1 ¶2.

stated that from the beginning of the pre-bid analysis, Derrico intended on using Ecosense's baffle boxes and submitted its bid based on the cost of Ecosense's baffle boxes.  Doc. No. 74-1 at 1 ¶ 4.  Robertson also stated that he and Dussich decided they would have a better chance of being awarded the contract if Suntree was listed as the baffle box supplier.  Doc. No. 74-1 at 1 ¶5.  Robertson further stated that "[w]e then planned to substitute Ecosense's products in place of Suntree's products after obtaining the contract.  Derrico would only have installed Suntree's products if the City denied our substitution request."  Doc. No. 74-1 at 1-2 ¶5.

Ecosense contends that Suntree's reliance on Robertson's declaration was unfounded because, in deposition, Robertson "later repudiated portions of his Declaration," stating he had not discussed the Project with Dussich until after Derrico was awarded the contract and denied the existence of a conspiracy.  Doc. Nos. 159 at 8; 191 at 8 (citing Doc. No. 33-1 at 18-20, 116).[8] Ecosense asserts that despite deposition testimony from other witnesses corroborating Robertson's deposition testimony, Suntree "continued to pursue its unsupported and entirely baseless claims against Dussich."  Doc. No. 159 at 8.

Defendants contend that Suntree's Lanham Act claims were meritless because Suntree failed to present any evidence of likelihood of confusion.   Doc. Nos. 159 at 8-11; 191 at 9-12.  Defendants also assert that Suntree filed its suit as part of a plan to drive Ecosense out of business.  Doc. Nos. 159 at 12-16; 191 at 12-15.  To support this contention, Defendants point to the following facts:  Suntree ordered a Dun & Bradstreet report on Ecosense; Suntree created a computer file on Ecosense; Suntree's counsel sent a letter claiming that Ecosense's baffle box infringed on its patent; Suntree wrote a letter opposing the approval of Ecosense as an equal substitute; Suntree sent public records requests to determine other bids it lost or almost lost;

---

[8] Ecosense moved to strike paragraphs four, five and six of Robertson's declaration.  Doc. No. 93.  The Court denied this motion as moot when it granted Ecosense's motion for summary judgment.  Doc. No. 123.

Suntree filed suit shortly after Derrico was awarded the contract; and Suntree dismissed Derrico from the suit.  Doc. Nos. 159 at 12-16; 191 at 13-15.

Defendants further contend that Suntree filed suit in bad faith as evidenced by its reliance on Robertson's declaration, which indicated that Dussich spoke to Robertson prior to Derrico bidding on the Project and implied a joint agreement between Derrico and Ecosense.  Doc. Nos. 159 at 17; 191 at 16.  Defendants indicate that Robertson refuted both points of fact in his deposition.  Doc. Nos. 159 at 17-18; 191 at 16-17.[9]  Defendants also point out that Suntree's settlement with Derrico only required Derrico to cooperate in the litigation and use Suntree exclusively if it was a pre-approved supplier, but did not involve injunctive or monetary relief.  Doc. Nos. 159 at 19; 191 at 18.  Finally, Defendants contend that Tom Happel (hereafter "Happel"), Suntree's primary witness and president, gave evasive and inconsistent testimony.  Doc. Nos. 159 at 19-20; 191 at 18-19.

Defendants' assertion that Robertson repudiated his declaration is not supported by the record.  Defendants cite pages 18-20 and 116 of Robertson's deposition to support this claim.  On pages 18-20, Robertson simply testified that he learned of Ecosense when Ecosense contacted and met with Derrico representatives about another project in Merritt Island.  Doc. No. 33-1 at 18-20.  On page 116 of his deposition, Robertson stated that the only paragraph in his declaration he would change is paragraph five because it "reads conspiracy-ish."  Doc. No. 33-1 at 116.  Robertson indicated that he was not sure whether his discussion was with Dussich or Randy Burden, and the discussion was that it would be great if Ecosense could get approved, otherwise Suntree's baffle boxes would be used.  Doc. No. 33-1 at 116.  Other than these clarifications, Robertson stated that his declaration was "accurate and truthful."  Doc. No. 33-1 at

---

[9]  Defendants contend that Robertson's declaration was finalized after multiple drafts in which numerous other false statements were removed.  Doc. Nos. 159 at 17; 191 at 16.

117.   Therefore, Robertson did not repudiate his declaration, but testified to clarifications he would make in paragraph five of his declaration.

Defendants' assertion that Suntree failed to present any evidence of confusion ignores the fact that Suntree offered the deposition testimony of Janice Szuflita as evidence of confusion in regard to Ecosense's power point presentation and brochure.  Doc. No. 123 at 17.  The Court, however, found this was insufficient to establish likelihood of confusion.  Doc. No. 123 at 17. The Eleventh Circuit likewise concluded that Suntree failed to establish likelihood of confusion. *Suntree Techs.*, 693 F.3d at 1348.

Suntree's failure to prove its claims, standing alone, is not a sufficient basis to award Defendants attorney's fees.  Rather, Defendants must establish bad faith or an improper motive. *Welding Servs.*, 301 F. Appx. at 864 (remanding the denial of attorney's fees and directing the court to decide whether the weakness of the trademark infringement claim was coupled with evidence of bad faith or an improper motive which would make the case an exceptional one); *Bureau of Dangerous Goods, Ltd. v. Hazmat Software, LLC*, No. 6:11-cv-774-Orl-18DAB, 2012 WL 1288807 at *11 (M.D. Fla. Mar. 30, 2012) (recommending motion for attorney's fees be denied where plaintiff presented no evidence opposing motion for summary judgment because there was no evidence of bad faith, plaintiff merely prosecuted the case in "slip-shod fashion").

In cases found to be exceptional, the plaintiff's statements and/or actions presented either direct or strong circumstantial evidence that plaintiff filed suit in bad faith or for an improper motive.  In *Tire Kingdom*, 253 F.3d at 1336, the Eleventh Circuit affirmed the finding that the case was exceptional because plaintiff did not disclose evidence refuting causation until a month before trial and plaintiff's vice-president testified that plaintiff raised its prices hoping there "was *enough pain and agony out there from the competition and this lawsuit . . . .*"  In *Vital*

*Pharmaceuticals, Inc. v. American Body Building Products, LLC*, 510 F. Supp. 2d 1043, 1049 (S.D. Fla. 2007), the court cited several reasons for finding the case was brought in "bad faith for an anticompetitive purpose." The court noted that plaintiff's chief executive officer's testimony at trial was evasive, lacked credibility and lacked any evidentiary support. *Id.* at 1049. The court indicated that plaintiff's claim that its bottle was new and unique was not credible because "all evidence revealed the opposite to be true . . . ." *Id.* at 1050. The Court further indicated that plaintiff filed suit to stifle legitimate competition, as evidenced by plaintiff's "evolving definition of its trade dress throughout the case." *Id.* at 1051; *see also Welding Servs.*, 301 F. Appx. at 864 (remanding for a determination of whether the case was exceptional where plaintiff's CEO stated he wanted to sue defendant out of business).

None of the evidence Defendants point to, individually or collectively, indicates Suntree filed suit in bad faith or to drive Ecosense out of business. Happel testified that he ordered a Dun and Bradstreet report because he thought Ecosense had gone out of business and it would be "good to know" its financial strength. Doc. No. 83 at 17. However, Happel stated that he did "[n]ot necessarily" order the report to determine whether Ecosense could afford to defend suit and indicated that it is understood that the information in the report could be old or grossly inaccurate. Doc. No. 83 at 17.

Although Happel testified that a folder about Ecosense was created, Defendants do not indicate what information was located in the folder. Simply creating a folder does not suggest that Suntree filed suit intending to litigate Ecosense out of business. Sending public records requests and a letter opposing the approval of Ecosense's baffle boxes on the Project as an equal substitute likewise does not suggest that Suntree filed suit for an improper purpose. Suntree's counsel's letter claiming Ecosense's baffle boxes infringed on Suntree's patents is not indicative

of a sinister motive because Ecosense acknowledges that "Suntree never filed a patent suit and the issue was apparently dropped." Doc. No. 159 at 14. The timing of the instant suit and fact that Suntree settled with Derrico, in exchange for Derrico's cooperation, does not suggest, in any way, that Suntree filed suit for an improper purpose. Robertson's declaration does not suggest bad faith because Robertson did not repudiate any of the statements contained therein, as noted previously.

This case proceeded according to the Case Management and Scheduling Order entered by the Court on February 3, 2010 (Doc. No. 20). Suntree never requested the discovery deadline, dispositive motions deadline or trial date be extended. If Suntree hoped to litigate Ecosense out of business, it would seem that Suntree would have attempted to prolong the case to inflate the parties' attorney's fees, rather than adhering to the deadlines set forth in the Case Management and Scheduling Order. Defendants have failed to establish that Suntree filed suit in bad faith or for an improper purpose. Accordingly, it is **RECOMMENDED** that Defendants' request for attorney's fees pursuant to the Lanham Act be **DENIED**.

In deciding the parties' cross-motions for summary judgment, the Court employed a Lanham Act analysis to all of Suntree's claims because Suntree did not put forth any theory that required a different analysis. Doc. No. 123 at 7. As the Court recognized, when a FDUTPA claim is predicated on trademark infringement, the FDUTPA claim rises or falls on the trademark infringement claim. Doc. No. 123 at 7. Because Suntree's FDUTPA claim was inseparably intertwined with its Lanham Act claims, Defendants have not demonstrated that they expended any time separate from defending against Suntree's Lanham Act claims, and Defendants are not entitled to an award of attorney's fees under the Lanham Act, it is **RECOMMENDED** that Defendants' request for attorney's fees under FDUTPA be **DENIED**.

*See JES Props., Inc. v. USA Equestrian, Inc.*, 432 F. Supp. 2d 1283, 1291-92 (M.D. Fla. 2006) (denying claim for FDUTPA attorney's fees where defendants did not demonstrate they expended any meaningful time defending the FDUTPA claim and plaintiffs conceded their FDUTPA claim rose or fell on their antitrust claims); *Chastain*, No. 08-81260-CIV, 2010 WL 5463859 at *2-3 (denying request for FDUTPA appellate attorney's fees and costs where FDUTPA claim was incidental to and predicated on plaintiff's primary claims of violations of the Truth in Lending Act and Florida Motor Vehicle Retail Sales Finance Act).

Based on the foregoing, it is **RECOMMENDED** that the Motion for Fees and Motion for Appellate Fees be **DENIED**.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**RECOMMENDED** in Orlando, Florida on February 7, 2013.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy